**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| POGOS ARSENOVIC LEVONYAN,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE, ET AL.,<br><br>Respondents. | Case No. 5:26-cv-01978-MBK<br><br>ORDER GRANTING PETITION FOR WRIT FOR HABEAS CORPUS |

Petitioner Pogos Arsenovic Levonyan, a native and citizen of the former Soviet Union, is currently in the custody of the Department of Homeland Security at the Adelanto Detention Facility. Mr. Levonyan was admitted to the United States in 1992 as a refugee and later became a lawful permanent resident. In 2013, Mr. Levonyan was ordered removed by an Immigration Judge ("IJ") following a criminal conviction. Immigration authorities detained Mr. Levonyan for approximately four months following the removal order, but released him on an Order of Supervision Plan ("OSUP") after they were unable to effectuate his removal. For the past over three decades, Petitioner

has resided in the United States with his family, worked as a valet parking attendant, complied with all his conditions of supervision, and has not sustained any additional criminal convictions.

On February 3, 2026, Mr. Levonyan reported for a scheduled check-in appointment with Immigration and Customs Enforcement ("ICE"). At the appointment, ICE officers arrested Mr. Levonyan without notice or an opportunity to explain why he should not be detained. During his subsequent confinement, the Government has not secured any travel documents for Petitioner to be removed to Armenia, or received any indication from the Armenian government that Petitioner could be repatriated to that country.

In this habeas action, Petitioner claims that the revocation of his OSUP without an opportunity to be heard violates procedural due process, 8 C.F.R. § 241.13(i)(2) and (3), and 8 C.F.R. § 241.4(*l*)(2)(iii). He also argues his ongoing confinement violates due process and 8 U.S.C. § 1231(a)(6), as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. In their Response to the Petition and Application for Temporary Restraining Order, Respondents state that they "are not presenting an opposition argument at this time." Dkt. 9 at 2.

Because it is undisputed that the Government has not secured any assurances from the Armenian government that Petitioner could be repatriated or taken any steps to facilitate his removal to a third country, the Court finds that Mr. Levonyan's removal is not reasonably foreseeable and his detention is not authorized by Section 1231. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Mr. Levonyan's immediate release, subject to the terms of his prior OSUP, and preventing his re-detention unless Respondents comply with the regulations governing the revocation of an OSUP. The Court further orders Respondents to return any

and all of Mr. Levonyan's personal property, including his employment authorization documents and photo identification.

## I.     FACTS AND PROCEDURAL HISTORY

Petitioner Pogos Aresenovic Levonyan is a native and citizen of the former Soviet Union. Dkt. 1 at 2. Mr. Levonyan entered the United States as a refugee in 1992, when he was six years old. Dkt. 1 at 2; Dkt. 1-1 at 3. Petitioner was later granted lawful permanent residence status. Dkt. 1 at 2. However, after he was convicted of an unspecified offense, an IJ ordered Petitioner removed on October 9, 2013. *Id.* Petitioner did not appeal the removal order to the Board of Immigration Appeals, and the removal order became final. *Id.*

After Mr. Levonyan was ordered removed, immigration authorities took him into custody at a detention center, where he remained detained for approximately four months. *Id.* ICE was unable to secure travel documents for Petitioner to be removed to Armenia, and released him on an OSUP on February 7, 2014. Dkt. 1-1 at 2. Since his release, Mr. Levonyan has complied with all conditions of release, including appearing in person as requested for check-in appointments, and has not sustained any additional criminal convictions. *Id.* Prior to his detention, Mr. Levonyan was employed as a valet attendant. Dkt. 1-1 at 3-4. He lived with his parents, both of whom are United States citizens, as is his sister. *Id.*

On February 3, 2026, Mr. Levonyan reported for an ICE supervision appointment. *Id.* The ICE Officer advised Mr. Levonyan that he was being detained "because there was a new presidential administration," and gave him a notice of revocation of release, but did not advise Mr. Levonyan whether he had violated any terms of his supervision, or provide any other reason for his

detention. *Id.* Mr. Levonyan was subsequently transported him to the Adelanto Detention Facility, where he remains detained. *Id.*

During his confinement, Respondents have not provided Petitioner with a written decision justifying his re-detention. *Id.* Approximately one week into his detention, an ICE officer interviewed Petitioner. *Id.* at 3. The officer asked Mr. Levonyan for his parents' names and current address in the United States, as well as Petitioner's most recent address abroad. *Id.* However, Petitioner was unaware of his last address abroad because he came to the United States when he was six years old. *Id.* The Officer took Petitioner's photo and advised Petitioner that ICE would have a response from the Armenian consulate regarding his travel documents in about two weeks. *Id.* Two weeks later, the same officer met with Petitioner again. *Id.* She took another photo of Petitioner, but did not have any response from the Armenian Consulate. *Id.* Petitioner has not had any interviews with any Armenian officials since his detention, or any additional interviews with ICE officers since the second interview. *Id.*

While detained at Adelanto, Mr. Levonyan has experienced difficulties due to his medical conditions. Dkt. 1 at 2. He has suffered from headaches, as well as leg and foot pain. *Id.* Mr. Levonyan required transfer to a bottom bunk, as his swollen feet prevented him from being able to climb to a top bunk. *Id.*

Petitioner filed the instant habeas petition, along and accompanying exhibits, on April 20, 2026. Dkt. 1, Dkt. 1-1 through 1-4. He asserts four causes of action: (1) ICE violated its regulatory procedures under 8 C.F.R. § 241.13(i) for revocation of release (first and second causes of action); (2) his re-detention without sufficient notice or an opportunity to be heard violates procedural due process; and (3) his ongoing detention violates 8 U.S.C. § 1231,

4

as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. *Id.* at 11-14. Petitioner requests that the Court issue an order requiring his immediate release subject to the same terms and conditions of his prior OSUP; to return any of Petitioner's personal property that was confiscated in the course of his detention, including any work authorization or identification documents; enjoining Respondents from re-detaining Petitioner unless Respondents comply with regulations governing the revocation of an OSUP and present sufficient evidence of changed circumstances to the Court that Petitioner's removal from the United States is reasonably foreseeable; and enjoin Respondents from re-detaining Petitioner without first notifying him of the reasons for the revocation of his release, providing him with an opportunity to rebut those reasons, and providing him with a prompt interview as required by regulation. Dkt. 1 at 15-16.

The Court issued General Order 26-05 and a Briefing Schedule on April 21, 2026. Dkt. 5. On the same date, Petitioner filed a Notice of Consent to Proceed before the Magistrate Judge. Dkt. 6. On April 27, 2026, the deadline for Respondents to withdraw their consent to proceed before the Magistrate Judge passed. Dkt. 7. Respondents filed an Answer on April 28, 2026. Dkt. 9. In their Answer, Respondents state that they "are not presenting an opposition argument at this time." *Id.* at 2.

## II.   DISCUSSION

In light of Respondents' statement that they "are not presenting an opposition argument," the Court finds that Petitioner's ongoing detention is unlawful. Petitioner has shown that his continued detention violates Section 1231, as construed by *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his removal is not reasonably foreseeable. Petitioner has also shown that his re-

5

detention without an opportunity to be heard violates procedural due process.

**A. Petitioner's Detention Violates 8 U.S.C. § 1231.**

Petitioner argues that he is entitled to release because no statute authorizes his ongoing confinement.

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id*. at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id*. at § 1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id*.

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id*. at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant

6

likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id*.

The Court finds that Petitioner's detention is not authorized by Section 1231(a)(6) because his removal is not "reasonably foreseeable." Mr. Levonyan has been detained since February 3, 2026. Petitioner's current detention has therefore lasted less than six months. However, Petitioner was previously detained for approximately four months by immigration authorities, until his release on an OSUP in 2013. The Government has therefore confined him, in total, for more than 180 days after he had an executable removal order, but has failed to remove him during that time. His ongoing detention is therefore "presumptively unreasonable." *See Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (holding "that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again" and collecting cases). *See also Bailey v. Lynch*, No. 16-cv-2600-JLL, 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) ("[T]he removal period does not restart simply because an alien who has previously been released is taken back into custody.").

Even if Petitioner's periods of detention cannot be cumulated, he may still challenge his detention as not authorized by Section 1231. *Zadvydas* establishes a "presumption" of unreasonableness after six months; it does not preclude a noncitizen from challenging their detention earlier where removal is demonstrably not foreseeable. *See Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395-96 (D.N.J. 2025) ("Although the Supreme Court established a six-

month period of presumptively reasonable detention, it did not preclude a detainee from challenging the reasonableness of his detention before such time" and collecting cases).

Since Petitioner's re-detention, the Government has not received any indication from the Armenian consulate that Petitioner could be deported to that country, or taken any concrete steps to effectuate Mr. Levonyan's removal to a third country, much less identify a country to which he can be lawfully removed or that would accept him. It appears that the Government detained Petitioner under the guise of removing him without having investigated whether such removal was possible. The statute does not permit such needless detention.

To the contrary, the Supreme Court has made clear that the Section 1231(a)(6) only permits detention where removal is "reasonably foreseeable":

> "In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.

*Zadvydas*, 533 U.S. at 699-700.

In sum, Petitioner's ongoing detention does not advance Section 1231's basic purpose because there is no reason to think that the Government can, or will, remove him to Armenia or to a third country. Furthermore, Respondents do not present any argument in opposition to Petitioner's factual or legal contentions. Dkt. 9. Accordingly, the Court concludes that Petitioner's continued detention is unlawful.

### B. Petitioner is Entitled to Notice and an Opportunity to be Heard Prior to Re-detention.

Petitioner also claims that his re-detention violates procedural due

8

process. Petitioner argues that his re-detention after his release under OSUP absent notice and opportunity to be heard violates the Fifth Amendment's Procedural Due Process Clause. Dkt. 1 at 11-13. Petitioner seeks the procedural protections afforded to released noncitizens with final orders of removal—like Petitioner—under Section 1231.

Governing regulations establish the process by which ICE may revoke a noncitizen's release on an order of supervision ("OSUP") under Section 1231. *See* 8 C.F.R. §§ 241.4(*l*), 241.13(i). ICE may revoke release when a noncitizen violates a condition of their OSUP, "on account of changed circumstances, [if ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future," or certain officials may exercise their discretion to revoke release. *Id*. §§ 241.4(*l*)(1), § 241.4(*l*)(2), 241.13(i)(1), 241.13(i)(2). Upon revocation of release, ICE must provide the noncitizen a copy of the decision "set[ting] forth the reasons for the continued detention." *Id*. § 241.4(d). Additionally, the noncitizen must be "notified of the reasons for revocation," *id*. § 241.4(*l*)(1), and afforded "an initial informal interview promptly ... to respond to the reasons for revocation stated in the notification," *id*. § 241.13(i)(3).

Here, the Petitioner alleges—and the Respondents do not contest—that he was re-detained without proper notice or any opportunity to be heard, in violation of the governing regulations. The Court therefore concludes that Petitioner is entitled to protection from any future re-detention by immigration authorities without adequate notice and an opportunity to be heard.

### III.    CONCLUSION

For the foregoing reasons, it is ORDERED that: (1) judgment be entered

9

granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to his prior OSUP terms and conditions, and preventing his re-detention unless Respondents comply with regulations governing the revocation of an OSUP and present sufficient evidence that Petitioner's removal from the United States is reasonably foreseeable; (3) Respondents are to return all personal property, including but not limited to work authorization documents and identification documents, to Petitioner; and (4) Respondents shall file a status report within seven days to confirm that Petitioner has been released from custody.

Dated: April 29, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

10